**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LAUREN UPDIKE, Administrator of The Estate of Gary Updike,<br><br>Plaintiff,<br><br>v.<br><br>MOUNT CARMEL BOROUGH,<br>DAVID DONKOCHIK,<br>JONATHAN MCHUGH,<br>KYLE SCHAUER,<br>EVAN FREILER, and<br>JOHN DOE,<br><br>Defendants. | No. 4:26-CV-00468<br><br>(Chief Judge Brann) |

**MEMORANDUM OPINION**

**NOVEMBER 10, 2026**

## I. BACKGROUND

On February 25, 2026, Plaintiff Lauren Updike, as Administrator of the Estate of Gary Updike, filed a six-count complaint against Defendants Mount Carmel Borough ("Mount Carmel"), and David Donkochik, Jonathan McHugh, Kyle Schauer, Evan Freiler, and John Doe (collectively, the "Officers").[1] In the ensuing months, Defendants Mount Carmel, Donkochik, McHugh, and Freiler filed motions to dismiss.[2] The motions are now ripe for collective disposition; for the reasons that follow, they are denied.

---

1 Doc. 1.
2 Docs. 8, 25, 23, and 14, respectively.

### A. Facts Alleged in the Complaint

The following facts are drawn from the complaint and are accepted as true for purposes of this motion.[3]

#### 1. The Parties

Plaintiff Lauren Updike is the administrator of the estate of Gary Updike, who allegedly succumbed, in June 2024, to injuries inflicted by a group of Mount Carmel law enforcement officers in September 2020.[4] Defendants David Donkochik, Jonathan McHugh, Kyle Schauer, Evan Freiler, and John Doe were Mount Carmel law enforcement officers at the time of the alleged incident.[5] Defendant Mount Carmel Borough is a Pennsylvania municipality.[6]

#### 2. The Alleged Incident

On September 20, 2020, Plaintiff's decedent, Gary Updike ("Mr. Updike"), was taken into custody by Defendants Freiler and McHugh following a brief pursuit and arrest for driving under the influence.[7] At the police station, Mr. Updike was cuffed and shackled, taken to an area known by the Defendants to lack video surveillance, and beaten unconscious.[8] After the beating, Mr. Updike was

---

[3] Doc. 1.
[4] *Id.* ¶¶ 4, 13-18.
[5] *Id.* ¶ 6.
[6] *Id.* ¶ 5.
[7] *Id.* ¶ 13.
[8] *Id.* ¶¶ 14-15.

hospitalized, comatose, and left with health complications that would eventually cause his death four years later.[9]

### 3. The Alleged Conspiracy

In his alleged abuse at the hands of Mount Carmel law enforcement, Mr. Updike was not alone. Between at least 2018 and 2021, the Defendant Officers allegedly conspired to routinely beat and intimidate arrestees through the use of unreasonable and excessive force.[10] Their conspiracy involved a threefold concealment strategy: first, arrestees were taken where video surveillance would not reach and were brutalized; second, the Officers falsely reported that the arrestees' conduct necessitated the Officers' violent response (and falsely charged the arrestees with related criminal offenses, such as aggravated assault or resisting arrest); and third, the Officers threatened arrestees with further violence should any arrestee blow the whistle on their abuse.[11]

The Officers' plot to conceal their abusive conspiracy failed. On June 15, 2023, Defendants McHugh, Donkochik, and Schauer were indicted in this Court for the above-described conspiracy, including the actions taken against Updike on September 20, 2020.[12] The indictment identified 22 instances of unreasonable force

---

[9] *Id.* ¶¶ 16-18.
[10] *Id.* ¶ 8.
[11] *Id.* ¶¶ 10-12.
[12] *Id.* ¶ 19.

and/or false reports involving McHugh, Donkochik, and Schauer.[13] Plaintiff alleges that Freiler engaged in acts similar to those outlined in the indictment. McHugh, Donkochik, and Schauer each pled guilty to their offenses and were sentenced to varying prison terms for Conspiracy to Deprive Rights Under Color of Law.[14]

#### 4. The Instant Action

After Mr. Updike's June 2024 death, Plaintiff Lauren Updike, as administrator of Mr. Updike's estate, filed the instant complaint on February 25, 2026.[15] Defendants Mount Carmel, Freiler, McHugh, and Donkochik thereafter moved this Court to dismiss the complaint.[16] These motions are fully briefed and are now ripe for disposition.

## II. DISCUSSION

### A. Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[17] and *Ashcroft v. Iqbal*,[18] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

---

[13] *Id.* ¶¶ 20, 22.
[14] *Id.* ¶¶ 24-26.
[15] Doc. 1.
[16] Docs. 8, 14, 23, 25.
[17] 550 U.S. 544 (2007).
[18] 556 U.S. 662 (2009).

on its face.'"[19] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[20]

**B. Analysis**

The moving Defendants each argue that Plaintiff's claims are barred by the applicable statute of limitations. Additionally, Defendant Donkochik argues that Plaintiff fails to allege sufficient facts showing his involvement in the alleged conspiracy, and Defendant Mount Carmel argues that it is immune from Plaintiff's wrongful death and survival actions.

**1. Timeliness**

Although the lapse of a statute of limitations is an affirmative defense, Courts may dismiss on timeliness grounds "when the statute of limitations defense is apparent on the face of the complaint."[21] In this case, 42 U.S.C. § 1983 borrows its

---

[19] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

[20] *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

[21] Fed. R. Civ. P. 8(c); *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017).

limitations period from that of Pennsylvania's personal injury tort law: two years.[22] Federal law governs when a cause of action accrues, and civil rights claims accrue under federal law "when the plaintiff knew or should have known of the injury upon which its action is based."[23] This inquiry is objective: the cause of action accrues "at the moment at which each of its component elements has come into being as a matter of objective reality."[24] Generally, a cause of action is considered to have accrued "when the last act needed to complete the tort occurs."[25] "The cause of action accrues even though the full extent of the injury is not then known or predictable. Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief."[26]

In the normal course of events, the statute of limitations would have run for Mr. Updike's tort injuries on September 20, 2022, two years after he was allegedly assaulted by the Mount Carmel officers.[27] But equitable tolling—which is governed by state law (unless inconsistent with federal law)[28]—can offer relief from inflexible limitations periods "when a party, through no fault of its own, is unable to assert its

---

22 *Nguyen v. Pennsylvania*, 906 F.3d 271, 273 (3d Cir. 2018); *Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998) (citing 42 Pa.C.S. § 5524).
23 *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (quoting *Sameric Corp.*, 142 F.3d at 599).
24 *Leonard v. City of Pittsburgh*, 570 Fed. App'x 241, 244 (3d Cir. 2014) (citing *William A. Graham Co. v. Haughey*, 646 F.3d 138, 150 (3d Cir. 2011))
25 *English v. City of Wilkes-Barre*, No. 22-2477, 2023 WL 2400698, *2 (3d Cir. Mar. 8, 2023).
26 *Wallace v. Kato*, 549 U.S. 384, 391 (2007) (internal quotation marks and citations omitted).
27 *See* Doc. 1, at 3.
28 *Pearson v. Sec'y Dept. of Corrs.*, 775 F.3d 598, 602 (3d Cir. 2015).

right in a timely manner."[29] The plaintiff bears the burden of proving that the limitations period should be tolled.[30] Accordingly, Plaintiff seeks to preserve her claims by marshaling two equitable tolling doctrines to her defense: the discovery rule and fraudulent concealment. As a last resort, Plaintiff seeks application of the continuing violations doctrine to preserve her claims. Because the discovery rule suffices at this stage to preclude dismissal on timeliness grounds, the Court foregoes discussion of Plaintiff's alternative theories of fraudulent concealment and continuing violations. Nothing in this Opinion forecloses Plaintiff from relying on them, or Defendants from renewing their timeliness arguments, on a developed record.

**a. Discovery Rule**

Pennsylvania's discovery rule "tolls the statute of limitations where an injury or its cause is not reasonably knowable."[31] For a court to toll the statute of limitations, the plaintiff must show that she used "reasonable diligence to investigate [her] claims."[32] A plaintiff demonstrates this reasonable diligence where she "exhibit[s] 'those qualities of attention, knowledge, intelligence and judgment which

---

[29] *Nicole B. v. Sch. Dist. of Phila.*, 237 A.3d 986, 995 (Pa. 2020) (citing *DaimlerChrysler Corp. v. Commonwealth*, 885 A.2d 117, 119 n.5 (Pa. Commw. Ct. 2005)).

[30] *Swietlovich v. Bucks County*, 610 F.2d 1157, 1162 (3d Cir. 1979).

[31] *Rice v. Diocese of Altoona-Johnstown*, 255 A.3d 237, 247 (Pa. 2021); *Getchey v. Cnty. of Northumberland*, 120 Fed. App'x 895, 898 (3d Cir. 2005) ("[W]here the existence of the injury is not known to the complaining party and such knowledge cannot be reasonably ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible.").

[32] *Riad v. Wells Fargo Bank*, No. 22-1757, 2023 WL 8676234, *3 (3d Cir. Mar. 23, 2023).

society requires of its members for the protection of their own interests and the interests of others.'"[33] Our state supreme court has acknowledged that Pennsylvania's discovery rule is "stricter" and "less plaintiff favorable" than that of other jurisdictions.[34] Further, the Third Circuit has observed that the discovery rule is applicable "only to those situations where the nature of the injury itself is such that no amount of vigilance will enable the plaintiff to detect an injury."[35]

The Defendants make similar arguments regarding application of the discovery rule in the instant case.[36] In essence, they argue that Mr. Updike plainly knew that he was injured after the incident and that the Officers had caused that injury, and that the discovery rule is therefore unavailing.[37]

Plaintiff responds that the Defendants conflate awareness of physical harm with awareness of the wrongful conduct that caused it.[38] Here, Plaintiff notes, the Officers eliminated relevant proof, substituted an official account blaming Mr. Updike, and threatened retaliation if he blew the whistle on his abuse.[39] Under these

---

33 *Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005).

34 *Rice*, 255 A.3d at 247; *Nicolaou v. Martin*, 195 A.3d 880, 892 (Pa. 2018)

35 *Getchey*, 120 Fed. App'x at 899.

36 The Court notes that Defendant Freiler's arguments are not just similar to those of Defendant Mount Carmel—they are identical. In fact, in nearly every way, Defendant Freiler's brief in support of his motion to dismiss is a carbon copy of the relevant portions of Defendant Mount Carmel's brief in support. *Compare* Doc. 15 *with* Doc. 9. This Court will presume that this coincidence derives from a joint defense agreement between Defendants Mount Carmel and Freiler.

37 *See* Doc. 9, at 6-7; Doc. 15, at 6-7; Doc. 24, at 11-13; Doc. 26, at 10.

38 *E.g.*, Doc. 28, at 7.

39 *Id.*

circumstances, Plaintiff argues that the question of when Mr. Updike or Plaintiff could have reasonably discovered the nature and cause of his injuries is a question of fact inappropriate for resolution at this stage of the litigation.[40]

The question is whether Plaintiff plausibly alleged that Mr. Updike neither knew nor should have known of his injury and its cause.[41] Ordinarily, this question rests with the jury. But, where "reasonable minds would not differ," the Court may decide it.[42]

The Court notes here a point of tension. In a non-precedential opinion, the Third Circuit noted that "Pennsylvania does not toll the statute of limitations for mental incompetence,"[43] citing 42 Pa.C.S. § 5533(a) and *A. McD. v. Rosen*.[44] Section 5533(a) provides that "insanity or imprisonment does not extend the time limited by this subchapter for the commencement of a matter." *Rosen*, as described by *Kreider v. Philhaven Adolescent Inpatient Treatment Ctr.*, reasoned that including "plaintiff's mental incapacity as a factor to be considered in determining the reasonableness of plaintiff's diligence runs counter to the reasonable person standard."[45]

---

40 *Id.*
41 *Fine*, 870 A.2d at 859.
42 *Id.* at 858-59.
43 *Kreider v. Philhaven Adolescent Inpatient Treatment Ctr.*, 592 F. App'x 59, 61 (3d Cir. 2014) (citing 42 Pa.C.S. § 5533(a) and *A. McD. v. Rosen*, 621 A.2d 128, 131 (Pa.Super. 1993)).
44 621 A.2d at 131.
45 *Kreider*, 592 F. App'x at 61 (quoting *Rosen*, 621 A.2d at 131) (cleaned up).

These authorities reject a subjective inquiry into a plaintiff's psychological state when applying the discovery rule. Plaintiff's theory survives without one. She alleges that the Officers' assault left Mr. Updike unconscious and comatose, an objective circumstance that would prevent any person, however diligent, from learning what happened to them. Additionally, after *Rosen* was decided, the Pennsylvania Supreme Court later confirmed that although reasonable diligence is objective, it accounts for "differences between persons" and "the circumstances confronting them at the time in question."[46] The Court therefore does not read § 5533(a) or *Rosen* to bar inquiry into individual circumstances. Although the Court will not toll the statute on the basis of any mental infirmity Mr. Updike may have suffered after the beating, it will take account of the unique circumstances confronting him at the time in question.

The complaint alleges that Mr. Updike was comatose after the beating and thereafter developed health complications that eventually led to his death.[47] Nowhere does it indicate when he regained consciousness, what his physical abilities were, or what he understood.[48] Because Plaintiff filed suit on February 25, 2026, her claims

---

46 *Fine*, 870 A.2d at 858 (quoting *Crouse v. Cyclops Industries*, 745 A.2d 606, 611 (Pa. 2000)).

47 Doc. 1 ¶¶ 16-18.

48 This omission strikes the Court as artfully vague. Defendant McHugh relies on Mr. Updike's criminal docket sheet—in an attached exhibit—to assert that Mr. Updike had recovered from his coma more than two years before his death because he entered a guilty plea on the underlying charges on August 16, 2021. Because the Court has not found Defendant McHugh's exhibit to be integral to or explicitly relied upon by the complaint, the Court may not consider it at this stage. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). But this is a fact that

remain timely so long as Mr. Updike neither knew nor should have known of his injury or its cause until after February 25, 2024. From the face of the complaint, the Court cannot say that he did. Drawing all reasonable inferences in Plaintiff's favor, it is plausible that Mr. Updike either did not regain consciousness or could not have become aware of his injury or its cause until after February 25, 2024. Therefore, Defendants' timeliness challenges presently fail. Defendants may renew them at summary judgment, when the record will reflect when Mr. Updike regained awareness and what he understood.

### 2. Defendant Donkochik's Involvement

In addition to the timeliness challenge, Defendant Donkochik argues, first, that Plaintiff failed to plausibly plead that he participated in a conspiracy related to Mr. Updike, and, second, that Plaintiff failed to plausibly plead his involvement in the alleged assault. The Court is not persuaded by either challenge.

To state a plausible claim for conspiracy under § 1983 conspiracy, a plaintiff must allege that "persons acting under color of state law conspired to deprive [them] of a federally protected right."[49] A bare assertion of conspiracy, however, will not suffice.[50] To survive a motion to dismiss, the complaint must set forth allegations

---

Defendants will be undoubtedly keen to develop through discovery and may warrant renewed treatment on a future motion for summary judgment.

[49] *Perano v. Twp. of Tilden*, 423 Fed.Appx. 234, 239 (3d Cir. 2011) (quoting *Ridgewood Bd. of Educ. v. N.E. ex rel M.E.*, 172 F.3d 238, 254 (3d Cir. 1999)).

[50] *Twombly*, 550 U.S. at 556.

addressing "the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose."[51]

Defendant Donkochik contests the particularity of Plaintiff's conspiracy claim. He argues that Plaintiff "does not allege that Donkochik was present at the station, participated in the alleged beating or was aware of the alleged beating" but rather "relies only on her information and belief to allege that Donkochik conspired with some or all of the individual Defendants related to incidents involving other people, but not the Decedent."[52] This, according to Donkochik, lacks the "particularities necessary to infer Donkochik participated in a conspiracy related to the Decedent."[53]

Not so, according to Plaintiff. She asserts that the Complaint supplies the four pleading requirements of § 1983 conspiracy claims that Plaintiff and Defendant Donkochik consider necessary under *Great Western Mining & Min. Co. v. Fox Rothschild LLP*: "the approximate time when the agreement was made, the specific parties to the agreement, the period of the conspiracy, and the object of the conspiracy."[54] Plaintiff notes that the complaint alleges that the agreement began in 2018; that McHugh, Freiler, Donkochik, and Schauer were the parties to the

---

[51] *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1166 (3d Cir.1989) *abrogated on other grounds by Beck v. Prupis*, 529 U.S. 494 (2000); *see also Great Western Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 179 (3d Cir. 2010).

[52] Doc. 26, at 13.

[53] *Id.*

[54] Doc. 28, at 8.

agreement; that the period of the conspiracy spanned June 2018 through at least December 2021; and the object of the conspiracy was an agreement to "injure, threaten, and intimidate arrestees" and conceal that force.[55]

The parties confuse *Great Western*'s conspiracy pleading requirement. They contend that a conspiracy complaint must allege facts "suggesting the approximate time when the agreement was made, the specific parties to the agreement, the period of the conspiracy, and the object of the conspiracy."[56] Actually, pleading conspiracy in this Circuit requires that the Plaintiff "set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose."[57] The first two elements of this corrected standard overlap with the parties' mistaken standard; the final element is omitted from the parties' standard. The effect is not fatal. Plaintiff has plausibly alleged the conspiracy period—June 2018 through December 2021—and object—to injure, threaten, and intimidate arrestees and thereafter conceal such actions from the arrestees. The remaining element—the certain actions of the alleged conspirators taken to achieve the conspiracy's object—can be discerned from Plaintiff's factual allegations contained in the complaint. To name a few, she alleges that McHugh,

---

55 *Id.*

56 *Id.*; Doc. 26, at 12 (asserting that pleading conspiracy "entails alleging specific facts that suggest the approximate time when the agreement was made, the specific parties to the agreement, the period of the conspiracy, and the object of the conspiracy.").

57 *Great Western*, 615 F.3d at 179 (internal quotation marks omitted) (quoting *Shearin*, 885 F.2d at 1166-67).

Freiler, Donkochik, and Schauer "punch[ed], kick[ed], chok[ed], tas[ed], beat[], and body-slamm[ed]" arrestees; that McHugh, Freiler, Donkochik, and Schauer ensured no videos of such conduct were captured or preserved; and that McHugh, Freiler, Donkochik, and Schauer filed false reports against arrestees. This is sufficient to meet *Twombly* and *Iqbal*'s pleading standards for a § 1983 conspiracy claim.

Defendant Donkochik also argues that Plaintiff failed to specify his involvement in the alleged constitutional violation.[58] Specifically, according to Donkochik, Plaintiff fails to allege that he was "present at the station, that he participated in the alleged beating or that he was aware of the alleged beating."[59] For this reason, he claims that Plaintiff fails to state an adequate § 1983 claim against him.

Plaintiff responds by recounting the elements of a § 1983 conspiracy claim: that two or more persons conspire to deprive a person of constitutional rights, that one or more of the conspirators performs an overt act in furtherance of the conspiracy, and that the overt act injures the plaintiff or deprives the plaintiff of a right or privilege of a citizen.[60] The second element, according to Plaintiff, necessarily rebuts Donkochik's argument: only one conspirator must have performed the overt act in furtherance.[61] Plaintiff further contests Donkochik's

---

58 Doc. 26, at 15.
59 *Id.*
60 *Jutrowski*, 904 F.3d at 294.
61 Doc. 28, at 9.

arguments that she relied on nothing more than a belief that he acted toward Mr. Updike as he allegedly acted in a prior case.[62] Rather, Plaintiff claims her complaint alleges that

> Donkochik was indicted on June 15, 2023, in federal court for the conspiracy … as well as for actions similar to and including those taken against the decedent[,] … that the Indictment identifies twenty-two instances of unreasonable force or false reporting by Donkochik and his codefendants[,] … and that on September 30, 2025, Donkochik was sentenced to 84 months of imprisonment on Conspiracy to Deprive Rights Under Color of Law, related to the instant matter.[63]

This, according to Plaintiff, exceeds the pleading standard of *Twombly* and *Iqbal*.

Here again the Court agrees with Plaintiff. Only one alleged co-conspirator must have performed an overt act in furtherance of the conspiracy. Plaintiff has plausibly alleged that and more. She first sets out the details of the conspiracy of which McHugh, Freiler, Donkochik, and Schauer were members—including the excessive force, the actions to conceal such force, and the intimidation to prevent complaints from victims.[64] Then she describes overt acts by McHugh, Freiler, Donkochik, and Schauer in furtherance of the conspiracy as whole—such as "punching, kicking, choking, tasing, beating, and body-slamming" arrestees and "falsely report[ing] that arrestees acted in a manner that necessitated a violent response."[65] Finally, she describes overt acts by Freiler and McHugh in further of

---

[62] *Id.* at 10.
[63] *Id.*
[64] Doc. 1 ¶¶ 8-12.
[65] *Id.* ¶¶ 9, 11.

the conspiracy specifically involving Mr. Updike, including the details of his beating.[66] That this particular component of the conspiracy omits Donkochik is immaterial. Plaintiff has plausibly alleged that two or more persons conspired to deprive Mr. Updike of his constitutional rights, that one or more of the conspirators performed an overt act in furtherance of the conspiracy, and that the overt act injured and/or deprived him of a right or privilege of a citizen. Accordingly, Defendant Donkochik's motion to dismiss is denied.

### 3. Claims Against Mount Carmel

Mount Carmel first claims that the *Monell* claim against the Borough must fail because the alleged underlying constitutional violation is barred by the statute of limitations.[67] Because the Court has denied Defendants' timeliness challenge to the underlying constitutional violation, the *Monell* claim stands.

Next, Mount Carmel argues that the wrongful death and survival action claims must be dismissed as to it on government immunity grounds. The Borough notes that wrongful death and survival actions sound in state tort law rather than federal law.[68] As such, Plaintiff is obliged to show that the alleged injuries fit one of Pennsylvania's enumerated exceptions to governmental immunity.[69] None of these

---

66 *Id.* ¶¶ 13-15.
67 Doc. 9, at 7.
68 *Id.* at 8.
69 *Id.* at 8-9.

exceptions apply, says Mount Carmel, and therefore it is immune to Plaintiff's wrongful death and survival actions.[70]

Plaintiff responds that her wrongful death and survival actions are not "freestanding state tort claims," but are instead properly understood as components of the federal § 1983 action.[71] According to Plaintiff, sections 1983 and 1988 together incorporate state law remedies, including wrongful death and survival actions.[72]

This question turns on the nature of § 1983 actions. Section 1983 allows plaintiffs to sue individuals or entities acting under color of state law for violations of their constitutional rights. Generally, a litigant "may only assert his own constitutional rights" because "one cannot sue for the deprivation of another's civil rights."[73] When the aggrieved individual has died, however, the administrator of their estate may stand in their shoes and pursue a § 1983 claim on behalf of the estate.[74]

As to the survival action, the analysis is straightforward. A survival action allows the estate to pursue claims the decedent could have raised but for his death.[75]

---

[70] *Id.* at 9.

[71] Doc. 10, at 13.

[72] *Id.*

[73] *O'Malley v. Brierley*, 477 F.2d 785, 789 (3d Cir. 1973) (citing *United States v. Raines*, 362 U.S. 17, 22 (1960); *McGowan v. Maryland*, 366 U.S. 420, 429 (1961)).

[74] *See generally Estate of Smith v. City of Wilmington*, 317 Fed. Appx. 237 (3d Cir.2009); *Kranson v. Valley Crest Nursing Home*, 755 F.2d 46 (3d Cir.1985).

[75] 42 Pa.C.S. § 8302.

Any damages obtained compensate the decedent's pain and suffering prior to death and the loss of his earning power from the date of injury until death. Section 1983 is a perfectly suitable vehicle for estate administrator-plaintiffs to pursue survival action claims on behalf of the decedent's estate for damages the decedent could have sought had he lived. Therefore, Mount Carmel's challenge to Plaintiff's survival action fails.

Whether § 1983 is an appropriate vehicle for wrongful death claims, however, is a live issue in the Third Circuit. District Courts in this Circuit have arrived at opposing conclusions on the question of whether damages may be obtained under § 1983 for wrongful death claims.[76] As noted, § 1983 permits plaintiffs to vindicate *their own* (or their decedent's) constitutional rights against officials acting under color of law.[77] But wrongful death claims serve to vindicate the constitutional rights of the *survivor* rather than the *decedent* to compensate for damages which the *survivor* sustained from the decedent's death—such as lost consortium or the economic effects of the decedent's death upon his family.[78] Nevertheless, the Court

---

[76] *Compare Becker v. Carbon Cnty.*, 177 F. Supp. 3d 841, 854 (M.D. Pa. 2016) (Caputo, J.) ("I am not persuaded that application of the wrongful death damages is inconsistent with Sections 1983 and 1988.") *and Cariveau v. Callwood*, No. CV 3:24-29, 2025 WL 1135096, at *11 (D.V.I. Apr. 17, 2025) (denying motion to dismiss wrongful death action under § 1983) *with Massey v. Fair Acres Geriatric Ctr.*, 881 F. Supp. 2d 663, 670 (E.D. Pa. 2012) (concluding that plaintiff could not bring a wrongful death claim under § 1983 because "remedies for a wrongful death do not afford redress for deprivations of [the decedent's] federal rights ... [thus], plaintiff [ ] individually has no standing to vindicate his mother's civil rights.").

[77] *O'Malley v. Brierley*, 477 F.2d 785, 789 (3d Cir. 1973) (citing *United States v. Raines*, 362 U.S. 17, 22 (1960); *McGowan v. Maryland*, 366 U.S. 420, 429 (1961)).

[78] *See, e.g.*, *Massey v. Fair Acres Geriatric Ctr.*, 881 F. Supp. 2d 663, 670 (E.D. Pa. 2012).

notes the extensive number of decisions in this Circuit and District that have allowed wrongful death actions pursued under § 1983 to proceed at least at the motion to dismiss stage.[79] In fact, the Court has identified no decision in this District dismissing a wrongful death claim pursued under § 1983. Therefore, the Court perceives at this juncture no basis to depart from this weight of authority within its District and Circuit. Mount Carmel's motion to dismiss Counts V and VI is denied.

## III. CONCLUSION

Defendants' motion to dismiss pursuant to Rule 12(b)(6) is denied.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[79] *See Becker*, 177 F. Supp. 3d at 854 (denying defendant's motion to dismiss wrongful death action under § 1983 on immunity grounds); *Cariveau*, 2025 WL 1135096, at *11 (same); *Maldet v. Johnstown Police Dep't*, No. 2:19-CV-325, 2019 WL 2435869, at *7 (W.D. Pa. June 11, 2019); *DeJesus v. City of Lancaster*, 2015 WL 1230319, at *3 (E.D. Pa. Mar. 17, 2015) (same).